Case 1:16-cv-00283 Document 13 Filed on 08/17/17 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
August 17, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAVIER CHAVEZ, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 1:16-283 |
| | § | |
| LORIE DAVIS, | § | |
|     Respondent. | § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On November 1, 2016, Petitioner Javier Chavez ("Chavez") filed a Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to 28 U.S.C. § 2254. Dkt. No. 1.

On March 9, 2017, Respondent Lorie Davis, in her official capacity as Director of Texas Department of Criminal Justice – Correctional Institutions Division (hereinafter "Texas" or "State") timely filed a motion for summary judgment. Dkt. No. 11.

After reviewing the record and the relevant case law, the Court recommends that the State's motion for summary judgment be granted. Chavez's claims are untimely filed and substantively meritless.

**I. Background**

    **A. Factual Background**

On direct appeal, the 13th Court of Appeals of Texas made a number of specific factual findings. Chavez v. State, No. 13-09-00068-CR, 2010 WL 2783869 at *1-5 (Tex. App. July 15, 2010) (unpubl.). As provided by law, the court sets forth and adopts those findings.[1] Thus, all of the facts, as set forth below, are quoted from the State Court of Appeals decision, changing only the formatting.

---

[1] The Court notes that any factual findings made by the state court are "presumed to be correct," unless the petitioner can show "by clear and convincing evidence" that they were incorrect. Norris v. Davis, 826 F.3d 821, 827 (5th Cir. 2016), cert. denied, 137 S. Ct. 1203, 197 L. Ed. 2d 250 (2017) (citing 28 U.S.C. § 2254(e)(1)). Chavez has raised no such challenge. Indeed, Chavez has not challenged any specific factual findings as found by the state court. Accordingly, the Court adopts the factual findings of the state court.

1

**1. Investigation & Trial**

Luis de Leon ("Commander de Leon"), an investigator with the Cameron County District Attorney's office, testified that on January 19, 2007, he met with Steven Rodriguez concerning a pending case in which Rodriguez was a victim. Commander de Leon stated that Rodriguez was to return on January 22, 2007, to provide some information "on an auto theft ring." Rodriguez never returned to provide that information.

On January 20, 2007, Rodriguez and Trinidad Sanchez were drinking and doing drugs at Sanchez's house [on Milpe Verde], in Brownsville, Texas, where Sanchez lived with his mother and grandmother. At some point that evening, a black Chevrolet Blazer arrived at the house, and Lucio Figueroa and Benjamin Pena exited the Blazer and entered Sanchez's house. Shortly thereafter, Chavez also entered the house. All five men exited the house and proceeded to the front yard.

Sanchez testified that once the men were outside, an unidentified person arrived in a Chevrolet Silverado pickup truck. That person approached Rodriguez and called him a snitch. Figueroa and Pena also called Rodriguez a snitch. Figueroa, Pena, and Chavez then began fighting with Rodriguez. They were hitting him with their fists. Sanchez began arguing with Figueroa, and the man from the Silverado got in his truck and drove off. Sanchez stated that at some point during the fight, Rodriguez ran into the house. However, Sanchez told Chris Ortiz, an officer with the Brownsville Police Department and the lead investigator in the case, that Rodriguez was taken into the house by Enrique Garcia, Sanchez's uncle.

Sanchez further testified that when Rodriguez entered the house, Chavez and Pena ran around the side of the house to the backyard. Sanchez admitted that he did not see what occurred in the backyard and that he was arguing with Figueroa at the time Chavez and Pena ran to the backyard. Sanchez stated that two to three minutes later, Chavez and Pena came running back to the front yard and that one of them said to Sanchez, "You're next." Chavez and Pena then got into the Blazer with Figueroa and left. Sanchez told Officer Ortiz that Chavez was wearing surgical gloves and had bloody hands when he came running from the backyard.

2

Chavez testified that he went into the backyard to "take a leak," and Sanchez admitted that he did not see Chavez with Rodriguez in the backyard. Sanchez also stated that he did not see Rodriguez again after Rodriguez went into the house.

Denise Rodriguez, a dispatcher with the Brownsville Police Department, testified that she was on duty the night of January 20, 2007, and that at about 1:30 a.m. in the morning of January 21, 2007, she received a 911 call from a male who identified himself as Steven Rodriguez. She noted that the caller repeatedly stated that he had been stabbed but did not identify his assailant. She dispatched paramedics to the location Rodriguez gave her.

Julio Briones, an officer with the Brownsville Police Department, testified that he was assigned to investigate a homicide [on Milpe Verde] in Brownsville, Texas. He went to the scene, and several other officers were already there. When he arrived, he was directed to a ditch approximately sixty yards behind the house and saw Rodriguez lying in the ditch. Rodriguez had been stabbed multiple times. Officer Briones collected blood samples from the area surrounding the ditch and from the Blazer. Officer Briones was also present during the autopsy of Rodriguez's body and took as evidence some fingernail clippings from Rodriguez's body. On cross-examination, Officer Briones testified that he photographed Chavez at the jail and did not see any signs of Chavez having been in a fight. Officer Briones also stated that he did not find any evidence at Chavez's house connecting Chavez to Rodriguez's murder. Norma Jean Farley, the chief forensic pathologist at Valley Forensics, testified that she performed the autopsy on Rodriguez and that he died in a homicide from the stab wounds.

Dora Lee Palomino testified that she was "seeing" Chavez during January 2007, including on January 20, 2007. On January 21, 2007, between midnight and 1:00 a.m., Palomino received a phone call from Chavez. Chavez was high on drugs, and she spoke with him for five to ten minutes. He asked for money. Later that morning, Palomino met Chavez at a park in Brownsville, Texas. Chavez arrived in the back seat of the Blazer and got into Palomino's car. Chavez told her that he had hurt someone and that he had stabbed someone.

3

He again asked for money and said that he needed money to leave. Chavez told her that he stabbed someone because that person "was messing with his friends." Chavez then exited Palomino's car and left in the Blazer. On January 22, 2007, Palomino picked up Chavez and his brother Ruben Chavez ("Ruben") at Chavez's house. Shortly thereafter, she was pulled over by a Brownsville police officer. On cross-examination, Palomino admitted that she often gave Chavez money for drugs. She also stated that at the time they were seeing each other, Chavez was also seeing another woman.

Ruben testified that he was not with Chavez on the night in question. The State played for the jury a recording of a statement Ruben gave to the police, but that recording is not in the record before us. Ruben testified that the State and the police coerced him into giving the statement. The State then questioned Ruben about some of the statements he made on the recording. Chavez told Ruben that there had been a fight but Chavez did not say he was involved in the fight. Ruben also stated that he had mentioned to the investigators that Chavez had some scratches on him but that Chavez goes fishing and works in construction, implying that those scratches could have been caused by those activities and not from the fight.

Jesse Pinales, an officer with the Brownsville Police Department, testified that on January 22, 2007, he went to Chavez's residence to arrest Chavez pursuant to an arrest warrant. Officer Pinales parked his unmarked vehicle near the residence and observed a vehicle approach the house. Officer Pinales saw a female and two males exit the house, enter the vehicle, and drive off. He observed that the car had a broken taillight and requested a patrol unit stop the vehicle. After the traffic stop occurred, Officer Pinales approached the vehicle and noticed Chavez sitting in the front passenger seat. Officer Pinales then arrested Chavez and took him into custody. Officer Pinales identified Palomino as the driver and Ruben as the back-seat passenger.

On January 22, 2007, Dalberto Luis de Leon, an officer with the Brownsville Police Department, went to Chavez's house. At the house, he met Juan Chavez ("Juan"), Chavez's

father. Juan consented to a search of the house, and Officer de Leon searched the house. He found a suitcase in Chavez's bedroom that had some dress shirts, still on hangers, folded up in the suitcase. Juan told him that the suitcase found in Chavez's room actually belonged to Juan who was packing it in preparation to take Chavez's mom out-of-town for medical treatment. Officer de Leon spoke with Ruben who informed him that the packed suitcase belonged to Chavez who was going out of town to look for work. On cross-examination, Officer de Leon stated that he did not find any evidence relating to the murder, such as bloody clothes or a knife, at the house.

    Chavez testified that he was at the house on Milpe Verde the night Rodriguez was murdered but that no fight occurred. He stated that he went behind the house to "take a leak" and that he did not see Rodriguez behind the house. Chavez said that he did not tell Palomino that he stabbed anyone. He claimed that the suitcase found in his room belonged to him and that he was living with his dad because he had recently moved out of his own residence due to a fight with his common-law wife. He claimed that Ruben was lying about Chavez's plans to leave town to look for work and that Ruben was lying about Chavez saying that he was in a fight. Chavez stated that he was a member of the "Vallucos," a protection gang that operates only in prison. He was "one hundred percent" Valluco. Chavez showed the jury a tattoo on his back which read "Valluco" and also discussed a tattoo of palm trees on his hand, stating that they stood for the "Valley." He said that outside of prison, he is a "family man" and that the Vallucos do not have a "code of silence."

    Chavez declared that Sanchez was lying about there having been a fight and about Chavez showing up after Figueroa and Pena. He never said that anyone was "next." He further stated that he did not stab Rodriguez and that Palomino was lying when she said that he told her he had been in a fight.

    On rebuttal, Dionicio Cortez, a lieutenant with the Cameron County Sheriff's Office in the jail division, testified that he is a classification officer responsible for classifying gang members that come into the jail. Lieutenant Cortez was an expert in gang identification. He

5

stated that while the Vallucos were initially organized as a protection gang and operated only to protect its members while they were in prison, the Vallucos now operate on the "outside" and are engaged in drug smuggling and dealing, burglaries, robberies, and car theft. Lieutenant Cortez testified that the Vallucos do have a "code of silence," which means that the Vallucos threaten snitches with bodily injury and assault and even execute them. Lieutenant Cortez noted that a Valluco is a "fifty percenter" when he enters jail but becomes a "one hundred-percenter" when he enters federal or state prison. A "one hundred percenter" has tattoos of palm trees that form a "V." Lieutenant Cortez testified that the palm trees tattooed on Chavez's hand refer to Chavez's being a "one hundred percenter" and stated that Chavez has "RGV" tattooed on his leg, which stands for "Rio Grande Valley or Rio Grande Valluco." Lieutenant Cortez also discussed a different tattoo on Chavez's leg, which he described as the tattoo of the Valluco "code of silence." Lieutenant Cortez further testified that the Vallucos have formed a car theft ring to provide cars to the Zetas, a powerful, northern Mexico drug gang. Lieutenant Cortez testified that if the Zetas were not happy with someone on the United States side of the border, they would ask the Vallucos to do a hit. The jury found Chavez guilty of murder, and the trial court sentenced him to life in prison.[2]

### 2. Direct Appeal

On direct appeal, Chavez – via appointed counsel – raised two interrelated issues, claiming that the evidence was legally and factually insufficient to support his conviction. Chavez v. State, No. 13-09-00068-CR, 2010 WL 2783869, at *4 (Tex. App. July 15, 2010).

On July 15, 2010, the 13th Court of Appeals issued an opinion, affirming Chavez's conviction. Id. The appellate court found that "[w]hile there is no physical evidence linking Chavez to Rodriguez's murder, there was substantial circumstantial evidence for the jury to consider." Id, at *6.

There is no evidence in the record that Chavez filed a petition for discretionary review

---

[2] The direct quotation of facts, taken from the 13th Court of Appeals, ends here.

with the Texas Court of Criminal Appeals.

### 3. State Habeas Proceedings

On May 27, 2015, Chavez filed a state habeas petition in the 107th District Court in Cameron County. Dkt. No. 12-1, p. 4. In that petition, Chavez raised nine claims, which the Court restates as four claims: (1) the admission of evidence of Chavez's gang affiliation deprived him of a fair trial;(2) Chavez is actually innocent of the offense;(3) the policy of Texas appellate courts to dismiss state habeas petitions that are filed more than four years after the conviction becomes final – based on a finding of laches – violates the Texas constitution; (4) the policy of Texas appellate courts to dismiss state habeas petitions that are filed more than four years after the conviction becomes final violates federal due process rights. Id, pp. 4-23.

On June 30, 2015, the 107th District Court in Cameron County filed findings of fact and a recommendation to the Court of Criminal Appeals. Dkt. No.12-1, pp. 101-03. The 107th District Court found that (1) Chavez should have raised the claim regarding the gang affiliation evidence on direct appeal; (2) Chavez had not shown that he was actually innocent of the offense; (3) Chavez had failed to pursue his claims with "reasonable diligence," and that the State was entitled to a defense of laches. Id.

On August 5, 2015, the Court of Criminal Appeals "denied" Chavez's petition "without [a] written order on findings of trial court without hearing." Dkt. No. 12-2, p. 139. The denial signified that the Appeals Court had considered the merits of Chavez's petition and found that relief was not warranted. Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc).

### B. Procedural History

On November 1, 2016, Chavez filed his habeas petition, pursuant to 28 U.S.C. § 2254, in this Court. Dkt. No. 1.

In that petition, Chavez raised five claims, which the Court restates and re-numbers as four claims: (1) the Texas courts deprived him of federal due process in resolving his state

7

habeas petition because it "follows a policy of rejecting all applications for post-conviction habeas corpus [relief] which are filed more than four years after the finality of judgment;" (2) the Texas courts deprived him of his due process rights protected by the Texas constitution when it applied the doctrine of laches to his state habeas petition; (3) the application of the laches doctrine to the state habeas petition rendered his state habeas rights "inadequate or ineffective," and, thus, unexhausted; and, (4) the admission of evidence of Chavez's gang affiliation deprived him of a fair trial. Dkt. No. 1.

On March 9, 2017, the State of Texas filed a motion for summary judgment. Dkt. No. 11. The State of Texas argues that Chavez's petition is untimely filed and cannot be saved by equitable tolling. The State further asserts that Chavez's first claim is meritless because "infirmities in state habeas proceedings are not grounds for federal habeas relief." Id., p. 15. As to Chavez's second claim, the State argues that claims regarding a violation of the Texas constitution are not cognizable in a federal habeas proceeding. Id. As to the third issue, the State argues that Chavez's petition was resolved on the merits and is not unexhausted. Id. As to the fourth issue, the State argues that the issue was defaulted; is purely an issue of state law; and is substantively meritless. Id.

Chavez did not respond to the motion for summary judgment.

## II. Applicable Law

### A. Summary Judgment

Summary judgment pursuant to Rule 56(c) is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The

8

> moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences are made and doubts are resolved in favor of the nonmoving party. Dean v. City of Shreveport, 438 F.3d 448, 454 (5th Cir. 2006). Hearsay is not competent summary judgment evidence. Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 549 (5th Cir. 1987).

A court may determine that no genuine issue of material fact exists, if it determines that no reasonable juror could find in favor of the nonmovant. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089 (5th Cir. 1995). The moving party, however, is not required to provide evidence negating the nonmovant's claims. Celotex Corp., 477 U.S. at 323. "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for entry of summary judgement, as set forth in Rule 56(c), is satisfied." Id. Summary judgment is an appropriate vehicle through which to resolve a habeas petition, where the facts otherwise support such resolution. Goodrum v. Quarterman, 547 F.3d 249, 255 (5th Cir. 2008).

**B. Section 2254**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner convicted in a state court may challenge his conviction to the extent it violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, only violations of the United States Constitution or federal law are subject to review by this Court under § 2254.

In conducting such a review, a federal district court:

> may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

9

> United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

"A decision is contrary to clearly established federal law under § 2254(d)(1) if the state court (1) 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law'; or (2) 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and reaches an opposite result.'" Simmons v. Epps, 654 F.3d 526, 534 (5th Cir. 2011) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).

"The state court makes an unreasonable application of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts'; or (2) 'either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Simmons, at 534 (quoting Williams, at 407).

Additionally, the AEDPA requires that federal law be "clearly established" "as articulated by the Supreme Court." Woodfox v. Cain, 609 F.3d 774, 800 n. 14 (5th Cir. 2010). "[A] decision by . . . [the Fifth Circuit] . . . or one of our sister circuits, even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)." Salazar v. Dretke, 419 F.3d 384, 399 (5th Cir. 2005).

Furthermore, a federal court may not review a state court's determination of state law issues. Thompson v. Thaler, 432 F. App'x 376, 379 (5th Cir. 2011); McCarthy v. Thaler, 482 F. App'x 898, 903 (5th Cir. 2012). "Under § 2254, federal habeas courts sit to review state court misapplications of federal law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law." Charles v. Thaler, 629 F.3d 494, 500–01 (5th Cir. 2011) (emphasis original). "It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law, and we defer to the state courts

interpretation of the Texas ... statute." Schaetzle v. Cockrell, 343 F.3d 440, 449 (5th Cir. 2003) (quoting Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir. 1995)).

### C. Timeliness

A petitioner has a one year "period of limitation" in which to file a § 2254 petition. 28 U.S.C. § 2244(d)(1). That period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). This one year period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in the state courts. 28 U.S.C. § 2244(d)(2).

Further, the limitations period is not jurisdictional and may be equitably tolled. Holland v. Florida, 560 U.S. 631, 645 (2010). For equitable tolling to excuse the late filing of a petition, the petitioner must show that he has been "pursuing his rights diligently" and that "some extraordinary circumstance" prevented timely filing. Id. at 649.

The filing of a state petition does not serve to "revive an expired limitation period." Villegas v. Johnson, 184 F.3d 467, 472-73 (5th Cir. 1999).

### III. Analysis

As observed earlier, Chavez has raised four claims: (1) he was deprived of federal due process in when laches was applied to his state habeas petition; (2) he was deprived of state-protected due process in when laches was applied to his state habeas petition; (3) the

application of the laches doctrine to the state habeas petition rendered his state habeas petition unexhausted; and, (4) the admission of evidence of his gang affiliation deprived him of a fair trial. Dkt. No. 1.  The Court will first address the timeliness of the petition and then address each of Chavez's claims in turn.

**A. Timeliness**

As previously noted, Chavez had one year in which to file his § 2254 petition in this Court.  As relevant here, Chavez had one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Chavez's conviction became final on August 16, 2010, when his period to file a petition for discretionary review with the Texas Court of Criminal Appeals expired. Tex. R. App. Proc. 68.2; Scott v. Johnson, 227 F.3d 260, 262 (5th Cir. 2000).  By the plain language of § 2244(d)(1)(A), Chavez had until August 16, 2011, to file a habeas petition in federal court.  Chavez did not file his petition until November 1, 2016, more than five years after the deadline passed. Dkt. No. 1.

The one-year period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review" is pending in the state courts. 28 U.S.C. § 2244(d)(2).  As recounted in the factual background, Chavez's first petition was filed on May 27, 2015. Dkt. No. 12-1, p. 4.  This petition did not toll the limitation period "because it was not filed until after the period of limitation had expired." Scott, 227 F.3d at 263 (emphasis original).

Given that Chavez's state petition did not toll the statute of limitations period, his petition is untimely filed.

**B. Equitable Tolling**

Even if Chavez's limitations period was not statutorily tolled, it may be equitably tolled. Holland, 530 U.S. at 645.  To avail himself of such relief from the limitations period, Chavez must establish "extraordinary circumstances" that warrant the tolling of the

limitations period. Id at 649.  Chavez bears the burden of establishing that equitable tolling is appropriate. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000).  Chavez has failed to meet this burden.

Chavez has stated that the reason that he did not timely file his habeas petition was that his lawyer on direct appeal, Moises Salas, did "not timely advise him of the results of the [direct] appeal," and that Salas passed away and the remaining lawyer in Salas's office could not locate the file. Dkt. No. 1, p. 19.  The Court notes that the direct appeal was denied on July 15, 2010. Chavez, 2010 WL 2783869.  Salas passed away on June 23, 2012. Dkt. No. 12-1, p. 85. Equitable tolling is reserved for litigants who have been diligently pursuing their rights. Holland v. Florida, 560 U.S. 631, 649 (2010).  Chavez does not explain how he diligently pursued his rights from July 2010 until June 2012; he does not explain if he ever attempted to contact Salas or the state appellate court concerning the status of his direct appeal. See O'Veal v. Davis, 664 F. App'x 355, 357 (5th Cir. 2016) (unpubl.) (noting that there is no case law "suggesting that an attorney's failure to notify a defendant of the status of his case rises to the level of an extraordinary circumstance that prevents the defendant from timely filing a federal habeas petition"); Lewis v. Cockrell, 33 Fed.Appx. 704 (5th Cir. 2002) (unpubl.) (equitable tolling was not appropriate because the petitioner could have contacted his attorney to inquire about the status of his appeal).

As a result, Chavez has not met his burden and equitable tolling is inappropriate. Even if equitable tolling was appropriate, Chavez is not entitled to the relief he seeks.  As discussed below, his claims are meritless.

### C. Federal Due Process Rights

Chavez asserts that he was deprived of federal due process in when laches was applied to his state habeas petition.  This claim is meritless.

The Fifth Circuit has repeatedly held that "alleged infirmities in state habeas proceedings are not grounds for federal habeas relief." Brown v. Dretke, 419 F.3d 365, 378 (5th Cir. 2005) (collecting cases).  Accordingly, Chavez's claim is foreclosed in this court.

13

Id.  This claim should be denied.

### D. State Due Process Rights

Chavez also asserts that his due process rights under the Texas Constitution were violated when laches was applied to his state habeas petition.  This claim, similarly, lacks merit.

Any claims that Chavez's state law rights were violated are not cognizable on federal habeas review. Sharp v. Johnson, 107 F.3d 282, 290 (5th Cir. 1997) ("The procedural defect involved herein is a matter purely of state, not federal, law, and therefore is in and of itself not cognizable on federal habeas corpus review.").  Again, this claim is foreclosed and should be denied.

### E. Adjudication on the Merits

Chavez appears to assert that the application of the laches doctrine to the state habeas petition rendered his state habeas petition unexhausted because the courts never ruled on its substance.  As with the others, this claim is also meritless.

As previously noted, the trial court issued findings of fact and conclusions of law regarding Chavez's state habeas petition. Dkt. No.12-1, pp. 101-03.  One of the reasons that the trial court cited for recommending denial of Chavez's petition was laches – that Chavez had waited so long to file his petition that the State of Texas was prejudiced in its ability to defend the conviction.[3]

On August 5, 2015, the Court of Criminal Appeals "denied" Chavez's petition "without [a] written order on findings of trial court without hearing." Dkt. No. 12-2, p. 139.  The Texas Court of Criminal Appeals has previously held that a denial of a habeas petition is a ruling on the merits; conversely, a dismissal is not a ruling on the merits. Ex Parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  Thus, the Texas courts considered the merits

---

[3] The trial court specifically found that Salas's death prejudiced the State's ability to defend the conviction because Salas could not be called to testify in any post-conviction hearings.

of Chavez's petition, despite any application of laches.

The Fifth Circuit has suggested in dictum that the term "on the merits" in § 2254(b)(2) includes "limitations or laches or procedural default." See U.S. v. Clark, 203 F.3d 358, 370 n. 13 (5th Cir.2000), vacated on other grounds, 532 U.S. 1005 (2001) (remanding case for further consideration in light of Daniels v. U.S., 532 U.S. 374 (2001)) and opinion withdrawn on other grounds, 284 F.3d 563 (5th Cir.2002) (affirming district court opinion after considering Daniels). Thus, it is apparent that the Texas courts ruled on the merits of Chavez's claim. This claim should be denied as meritless.

### F. Gang Evidence

Chavez asserts that the admission of evidence of his gang affiliation deprived him of a fair trial. Dkt. No. 1. He argues that it violated Texas Penal Code § 7.02 because it allowed the jury to find him guilty by association. This claim is also meritless.

As an initial matter, the Texas courts found that this claim should have been raised on direct appeal. Dkt. No.12-1, pp. 101-03. Under Texas law, the "writ of habeas corpus ordinarily may not be used to litigate matters that could have been raised at trial and on direct appeal." Ex parte Jennings, No. 14-09-00817-CR, 2010 WL 2968043, at *3 (Tex. App. July 29, 2010) (citing Tex.Code Crim. Proc. Ann. art. 11.072, § 3). The Fifth Circuit has concluded that when a state court dismisses a habeas claim on the grounds that it should have been raised on direct appeal, a federal court has "no power" to review that decision. Moses v. Davis, 673 F. App'x 364, 367 (5th Cir. 2016) (unpubl.) (citing Scheanette v. Quarterman, 482 F.3d 815, 827 (5th Cir. 2007)).

Furthermore, Chavez's claim rests on state law grounds, namely that the court violated Texas Penal Code § 7.02. As noted earlier, this Court lacks the authority to review any violations of state law made in a federal habeas petition. Sharp, 107 F.3d at 290.

Moreover, this claim is substantively meritless. The trial court instructed the jury that it could find Chavez guilty if Chavez actually committed the murder or if he was "criminally responsible" for the actions of the murderer. Dkt. No. 12-12, p. 921. The jury was also

15

instructed that Chavez would be "criminally responsible" if he "solicits, encourages, directs, aids or attempts to aid the other person to commit the offense." Id.

Under the facts as found by the state appellate court, there were sufficient facts in the record to show that Chavez actually committed the murder. The victim was stabbed to death. Chavez was seen fighting with the victim and was also seen wearing bloody gloves after the murder. The jury heard evidence that the murder was gang-related. Bailey v. State, No. 01 15 00215 CR, 2016 WL 921747, at *16 (Tex. App. Mar. 10, 2016) ("Evidence of gang affiliation may be relevant to show that the defendant had a motive to commit a gang-related crime.").

Thus, this claim is meritless and should be denied.

## IV. Recommendation

It is recommended that the motion for summary judgment filed by Respondent Lorie Davis be granted. Dkt. No. 11. It is further recommended that Javier Chavez's petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 be dismissed as untimely filed, or alternatively, denied as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2254 motion to the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). "Importantly, in determining this issue, we view the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Druery v. Thaler, 647 F.3d 535, 538 (5th Cir. 2011) (internal quotations omitted) (citing Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir.2000)). The district court must rule upon a certificate of appealability when it "enters a final order adverse

to the applicant." Rule 11, Rules Governing § 2254 Petitions.

After reviewing Chavez's § 2254 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Chavez's § 2254 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **RECOMMENDED** that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on August 17, 2017.

_____
Ronald G. Morgan
United States Magistrate Judge